DOMENIC COSSI, ESQ.
MAXWELL KIRCHHOFF, ESQ.
WESTERN JUSTICE ASSOCIATES, PLLC
303 West Mendenhall, Suite 1
Bozeman, Montana 59715
(406) 587-1900

*Attorneys for the Plaintiff*

## MONTANA EIGHTEENTH JUDICIAL DISTRICT COURT, COUNTY OF GALLATIN

| | |
|---|---|
| Jory Ruggiero , <br><br> Plaintiff, <br><br> v. <br><br> State Farm Mutual Automobile Insurance Company; State Farm Fire and Casualty Company and JOHN DOES 1 through 5, <br><br> Defendants. | Cause No: DV-18-660 A <br><br> **COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF** <br><br> **and** <br><br> **REQUEST FOR JURY TRIAL** <br><br> (2) Summons Issued |

Plaintiff, Jory Ruggiero alleges as follows in support of his Complaint against Defendants.

### I. PARTIES, JURISDICTION AND VENUE

1.     The Plaintiff, Jory Ruggiero (Ruggiero), is and, at all times relevant to this action, has been a resident of Bozeman, Montana.

2.     Upon information and belief, Defendant State Farm Mutual Automobile Insurance Company (State Farm) is incorporated in Illinois with its principal place of business at One State Farm Plaza, Bloomington, Illinois 61710.  This company is a corporation

engaged in the business of insurance within the State of Montana, and is an insurer for the purposes of Mont. Code Ann. § 33-18-201, et. seq.

3.      Upon information and belief, Defendant State Farm Fire and Casualty Company (State Farm) is Incorporated in Illinois with its principal place of business at One State Farm Plaza, Bloomington, Illinois 61710.  This company is a corporation engaged in the business of insurance within the State of Montana, and is an insurer for the purposes of Mont. Code Ann. § 33-18-201, et. seq.

4.      Ruggiero is a proper party to bring this action in that he has current claims for repair costs to his vehicle which costs his auto insurer, State Farm, refuses to pay.

5.      Venue properly lies in the Montana Eighteenth Judicial District, Gallatin County, as the county where the real property damaged is located, as the place of contract performance between Ruggiero and State Farm, and as the location where Ruggiero's tort claims against State Farm arose.

## II. GENERAL ALLEGATIONS

6.      On February 18, 2018, Ruggiero was driving his 2017 Dodge Pickup east on Huffine Lane in Bozeman, Montana.  Hannah Lumbus was traveling West on Huffine Lane.  Ms. Lumbus lost control of her Ford pickup, crossed three lanes of traffic and collided head-on with Ruggiero's vehicle.

7.      Ruggiero's vehicle sustained approximately $24,089.50 in damage which was repaired at a State Farm preferred auto shop, Billion Auto, in Bozeman, Montana.

8.      Ms. Lumbus and her auto insurer, CSAA, both agreed that this was an admitted liability accident caused solely by Ms. Lumbus.

9.      Ruggiero made a claim with CSAA for all property damages from the collision which included, among other things: the tow truck charges for his vehicle; the rental car charges while his vehicle was under repair; his reasonable time spent dealing with the vehicle repair; his deductible for his own auto policy through State Farm; the repair cost for his vehicle and the residual diminished value of his truck remaining after the repairs.

10.     Recognizing that Ruggiero's property damages exceeded CSAA property damage policy limit of $20,000, CSA sent the $20,000 policy limit to Ruggiero on or about March 28, 2018. CSAA's policy limit payment was not allocated to any of Ruggiero's specific damages. It was an undifferentiated policy limit payment.

11.     On about March 20, 2018, Ruggiero made a claim for the cost of repairing his truck with his first-party auto insurer, State Farm. Ruggiero informed State Farm that the portion of CSAA's policy limit payment left after paying Ruggiero's damages for things like the towing bill, the rental car bill, and the residual diminished value of his vehicle would be insufficient to cover all of Billion's repair bill for his vehicle.

10.     Ruggiero retrieved his repaired vehicle from Billion Auto on about April 23, 2018. Believing that Ruggiero's State Farm policy would pay for the repairs, Billion required Ruggiero to pay his $500 deductible with State Farm and released the vehicle to Ruggiero.

11.     On May 18, 2018, State Farm informed Billion Auto that State Farm would only pay the portion of Billion's repair bill that exceeded CSAA's $20,000 policy limit. That amount paid by State Farm was $3589.50. State Farm informed Billion that Ruggiero would have to pay Billion another $19,500 so that Ruggiero's total payment to Billion

was one hundred percent of the $20,000 CSAA policy limit that had been paid to Ruggiero.

12. Over the course of the following weeks, Ruggiero and State Farm corresponded regarding State Farm's payment of Billion Auto's repair bill. Ruggiero implored State Farm to pay Billion's repair bill and then work with Ruggiero to determine a fair subrogation value for Ruggiero to pay State Farm out of CSAA's policy limit payment, taking into account Ruggiero's property damages other than just repair costs, including damages such as his rental car charges, tow charges, the residual diminished value of his truck and his time spent on getting the repairs done. In the alternative, Ruggiero asked State Farm for its position regarding the diminished value of his truck and his time in dealing with the property damage claim. Ruggiero explained to State Farm that, "If State Farm flatly refuses to discuss the residual diminished value of my truck and my time in dealing with the property damage claim, there is no way for us to determine what portion of CSAA's payment is fairly allocated to repairs versus the other property damages." (email from Ruggiero to Kay Buckentin, June 5, 2018). An experienced appraiser at Billion Auto Sales has informed Ruggiero that even with excellent repairs, his truck is worth $4,000-$5,000 less because it has been a significant wreck.

13. On May 28, 2018, State Farm agreed that Ruggiero was entitled to keep $5,034.66 of CSAA's policy limit payment. State Farm calculated this amount as follows: rental car ($4,110.16); Towing (424.50); and Ruggiero's deductible with State Farm ($500). (letter from Kay Buckentin to Jory Ruggiero, May 28, 2018). State Farm agreed that it owed this amount to Billion for repair costs, in addition to the $3,589.50 State Farm had previously paid. State Farm informed Ruggiero that State Farm would

send the $5,034.66 to Billion. However, even when Ruggiero informed State Farm that
Billion was about to submit him to collections, State Farm never did send any additional
payment to Billion. State Farm also refused to allow Ruggiero any compensation from
the CSAA policy limit for the residual diminished value of his truck or for his time in
dealing with the repair. Instead, State Farm sent Ruggiero a letter informing him that
State Farm's policy does not cover his time or residual diminished value. (Letter from
Kay Buckentin to Ruggiero, June 1, 2018). Ruggiero responded with a letter explaining
that it is irrelevant that State Farm's policy may not cover these items of his damages –
that is why they must come out of CSAA's policy for the tort feasor. (email from Jory
Ruggiero to Kay Buckinten, June 5, 2018).

14.     On June 4, 2018, State Farm called Billion Auto and informed them that State
Farm would not be paying any more toward the repairs than the $3589.50 that State Farm
previously paid. Billion Auto emailed Ruggiero and told him that Billion needed
Ruggiero to resolve Billion's bill that day, or Billion would submit him to collections.

15.     On June 4, 2018, Ruggiero forwarded Billion Auto's email to State Farm and,
again, begged State Farm to pay Billion, so that Ruggiero would not be sent to
collections. Ruggiero sent State Farm another email on June 5, 2018, begging State Farm
to either pay Billion or work with Ruggiero to determine the proper value of his damages
to be deducted from CSAA's policy limit payment, so that State Farm could pay the
proper net amount of its obligation for Billion's repair bill.

16.     On June 5, 2018 Ruggiero received a voicemail from State Farm informing him
that State Farm would not be paying more than the $3589.50 it had already paid and that

Ruggiero must sign over the full $20,000 policy limit payment from CSAA to Billion Auto.

17.    Billion Auto informed Ruggiero that it had waited as long as it could for payment and that, if his bill was not satisfied in full by June 13, 2018, Billion would submit him to collections on that date.

18.    On the morning of June 12, 2018, Ruggiero paid Billion $20,000 out of his personal account in order to avoid being turned over to collections. Later that day, State Farm resent Ruggiero its June 1, 2018 letter explaining that State Farm's policy would not cover his lost time on the repair or his residual diminished value of his vehicle. Ruggiero has not been made whole for his property damages from the February 18, 2018 collision. State Farm is engaging in early subrogation without conducting a made whole analysis. Ruggiero has sustained damages by virtue of State Farm's violation of Montana law and its refusal to honor its obligations under its insurance contract. Ruggiero's damages include, but are not limited to: attorney fees; the loss of use of money; emotional distress; and lost time and income. Ruggiero's compensatory damages do not exceed $75,000.

### III.  CLAIMS FOR RELIEF

### COUNT ONE - Breach of Contract

19.    Plaintiff hereby incorporates every other allegation in this complaint as though fully set forth herein.

20.    State Farm had a contractual duty to investigate and pay Ruggiero's claim for the repair of his vehicle.

21.    State Farm breached its contractual duty by failing to properly investigate and pay Ruggiero's claim.  State Farm did not even pay the $5,034.66 that it admitted it owed on the claim.

22.    State Farm's breaches of contract caused damage to Ruggiero.

## COUNT TWO - Insurance Bad Faith

23.    Plaintiff hereby incorporates every other allegation in this complaint as though fully set forth herein.

24.    State Farm: failed to properly investigate and apply its policy provisions to Ruggiero's claim; failed to respond to Ruggiero's entreaties for State farm to either pay Billion's repair bill or work with Ruggiero to determine an proper allocation of CSAA policy limit payment; and failed to properly pay Ruggiero's claim.  State Farm did not even pay the $5,034.66 that it admitted it owed on the claim.  Through this and other conduct, State Farm breached its statutory duties under the Montana Unfair Claims Settlement Practices Act by violating § 33-18-201, *et. seq.*, MCA which provides, *inter alia*, that an insurer may not:

> (1) misrepresent pertinent facts or insurance policy provisions relating to coverages at issue;
>
> \*    \*    \*    \*    \*
>
> (4) refuse to pay claims without conducting a reasonable investigation based upon all available information;
>
> (5) fail to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;
>
> (6) neglect to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear;

§ 33-18-201(1), (4), and (5), (6), MCA.

25.     State Farm's conduct also constitutes illegal early subrogation in violation of

Montana's Made Whole Doctrine.  As a direct and proximate result of State Farm's

violations of the above-referenced laws, Ruggiero has suffered damages.

## COUNT THREE - Declaratory Judgment

26.     Plaintiff hereby incorporates every other allegation in this complaint as

though fully set forth herein.

27.     A justiciable controversy exists between Ruggiero and State Farm with

respect to interpretation of the terms of Ruggiero's policy with State Farm and State

Farm's obligations with respect to Ruggiero's claim for payment of Billion Auto's repair

bill.

28.     Ruggiero is entitled to a declaratory ruling, pursuant to MCA § 27-8-201,

*et. seq.*, that State Farm must pay more than the $3589.50 it has paid to date toward

Billion's repair bill.

## COUNT FOUR - Punitive Damages

29.     Plaintiff hereby incorporates every other allegation in this complaint as though

fully set forth herein.

30.     State Farm deliberately attempted to save itself money by engaging in insurance

bad faith and failing to investigate or pay a legitimate claim.  State Farm knew that such

conduct would harm Ruggiero.  This conduct constitutes actual malice as defined in § 27-

1-221, MCA, and justifies imposition of punitive or exemplary damages in an amount

Plaintiff's Complaint                                                                    Page 8

sufficient, in view of the size and wealth of State Farm, to make an example of its conduct and to deter similar wrongful actions by it and other insurers.

## IV.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the Court grant the following relief:

1.      Determine that State Farm is liable for Ruggiero's compensatory damages in an amount that is fair and reasonable in light of State Farm's conduct;

2.      For declaratory judgment that State Farm was, and is, obligated to pay more than the $3589.50 it has paid to date toward Billion's repair bill;

3.      For a reasonable sum of money to compensate Ruggiero for attorney fees and costs incurred incident to the prosecution of this claim, pursuant to Montana Declaratory Judgments Act, MCA § 27-8-101, *et. seq.*; Common Fund Doctrine; Private Attorney General Doctrine; the insurance exception to the American Rule; and any other applicable law;

4.      Award Ruggiero punitive damages; and

5.      Award any other relief, including pre-judgment interest, to which Ruggiero may be entitled at law or in equity.

## V.  DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by twelve-person jury on all issues so triable.

DATED this 13th day of June, 2018.

WESTERN JUSTICE ASSOCIATES, PLLC

DOMENIC COSSI, ESQ.
303 W. Mendenhall, Suite 1
Bozeman, MT  59715
*Attorneys for Plaintiffs*