DOMENIC COSSI, ESQ.
MAXWELL KIRCHHOFF, ESQ.
WESTERN JUSTICE ASSOCIATES, PLLC
303 West Mendenhall, Suite 1
Bozeman, Montana 59715
(406) 587-1900

*Attorneys for the Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| JORY RUGGIERO,<br><br>Plaintiff,<br><br>v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY; STATE FARM FIRE AND CASUALTY COMPANY; and JOHN DOES 1 THROUGH 5,<br><br>Defendants. | **Cause No: CV-18-48-BU-BMM**<br><br><br>**PLAINTIFF'S PRELIMINARY PRETRIAL STATEMENT** |

Pursuant to Local Rule 16.2(b)(1) and this Court's November 6, 2018

Preliminary Pretrial Conference, Plaintiff Jory Ruggiero hereby submits his

Preliminary Pretrial Statement.

## STATEMENT OF FACTS

On February 18, 2018, Plaintiff was driving his 2017 Dodge Pickup east on Huffine Lane in Bozeman, Montana.  Hannah Lumbus was traveling West on Huffine Lane.  Ms. Lumbus lost control of her Ford pickup, crossed three lanes of traffic and collided head-on with Plaintiff's vehicle. Plaintiff's vehicle sustained approximately $24,089.50 in damage.  A State Farm preferred auto shop, Billion Auto located in Bozeman, repaired Plaintiff's vehicle.

Ms. Lumbus and her auto insurer, CSAA, both agreed that this was an admitted liability accident caused solely by Ms. Lumbus.  Plaintiff made a claim with CSAA for all property damages from the collision which included, among other things: the tow truck charges for his vehicle; the rental car charges while his vehicle was under repair; his reasonable time spent dealing with the vehicle repair; his deductible for his own auto policy through State Farm; the repair cost for his vehicle and the residual diminished value of his truck remaining after the repairs.

Plaintiff's property damages exceeded CSAA property damage policy limit of $20,000.  CSAA sent the $20,000 policy limit to Plaintiff on or about March 28, 2018.  CSAA's policy limit payment was not allocated to

any of Plaintiff's specific damages.  It was an undifferentiated policy limit payment.

On about March 20, 2018, Plaintiff made a claim for the cost of repairing his truck with his first-party auto insurer, State Farm.  He informed State Farm that the portion of CSAA's $20,000 policy limit payment left after paying his damages for things like the towing bill, the rental car bill, and the residual diminished value of his vehicle would be insufficient to cover all of the $24,089.50 repair bill for his vehicle.

Plaintiff retrieved his repaired vehicle from Billion Auto on about April 23, 2018 and paid Billion the $500 deductible on his first party coverage through State Farm.  On May 18, 2018, State Farm informed Billion Auto that State Farm would only pay the portion of Billion's repair bill that exceeded CSAA's $20,000 policy limit.  That amount paid by State Farm was $3589.50.  State Farm informed Billion that Plaintiff would have to pay Billion another $19,500 so that his total payment to Billion was one hundred percent of the $20,000 CSAA policy limit that had been paid to him.

Over the course of the following weeks, Plaintiff and State Farm corresponded regarding State Farm's payment of Billion Auto's repair bill. Plaintiff implored State Farm to pay Billion's repair bill and then work with

him to determine a fair subrogation value for Plaintiff to pay State Farm out
of CSAA's policy limit payment, taking into account Plaintiff's property
damages other than just repair costs, including damages such as his rental
car charges, tow charges, the residual diminished value of his truck and his
time spent on getting the repairs done.  In the alternative, Plaintiff also asked
State Farm for its position regarding the diminished value of his truck and
his time in dealing with the property damage claim.  He explained to State
Farm that, "If State Farm flatly refuses to discuss the residual diminished
value of my truck and my time in dealing with the property damage claim,
there is no way for us to determine what portion of CSAA's payment is
fairly allocated to repairs versus the other property damages."  An
experienced appraiser at Billion Auto Sales informed Plaintiff that even with
excellent repairs, his truck is worth $4,000-$5,000 less because it has been in
a significant wreck and the wreck is recorded in the publically available
history of the vehicle.

On May 28, 2018, State Farm agreed that Plaintiff was entitled to
keep $5,034.66 of CSAA's policy limit payment.  State Farm calculated this
amount as follows: rental car ($4,110.16); Towing (424.50); and Plaintiff's
deductible with State Farm ($500).  State Farm agreed that it owed this
amount to Billion for repair costs, in addition to the $3,589.50 State Farm

had previously paid.  State Farm informed Plaintiff that it would send the

$5,034.66 to Billion.  However, even when Plaintiff informed State Farm

that Billion was about to submit him to collections, State Farm never did

send any additional payment to Billion.  State Farm also refused to allow

Plaintiff any compensation from the CSAA policy limit for the residual

diminished value of his truck or for his time in dealing with the repair.

Instead, State Farm sent Plaintiff a letter informing him that State Farm's

policy does not cover his time or residual diminished value.  Plaintiff

responded with a letter explaining that it is irrelevant that State Farm's

policy may not cover these items of his damages – that is why they must

come out of the tortfeasor's CSAA policy.

On June 4, 2018, State Farm called Billion Auto and informed them

that State Farm would not be paying any more toward the repairs than the

$3589.50 that State Farm previously paid.  Billion Auto emailed Plaintiff

and told him that Billion needed him to resolve Billion's bill that day, or

Billion would submit him to collections.  On June 4, 2018, Plaintiff

forwarded Billion Auto's email to State Farm and, again, begged them to

pay Billion, so that he would not be sent to collections.  Plaintiff sent State

Farm another email on June 5, 2018, begging them to either pay Billion, or

work with him to determine the proper value of his damages to be deducted

from CSAA's policy limit payment so that State Farm could pay the proper net amount of its obligation for Billion's repair bill.

On June 5, 2018 Plaintiff received a voicemail from State Farm informing him that State Farm would not be paying more than the $3,589.50 it had already paid and that he must sign over the full $20,000 policy limit payment from CSAA to Billion Auto. Billion Auto informed Plaintiff that it had waited as long as it could for payment and that, if his bill was not satisfied in full by June 13, 2018, Billion would submit him to collections on that date. On the morning of June 12, 2018, Plaintiff paid the remainder of Billion's $20,000 bill out of his personal account in order to avoid being turned over to collections. Later that day, State Farm resent him its June 1, 2018 letter explaining that State Farm's policy would not cover his lost time on getting his vehicle repaired or his residual diminished value of his vehicle. On August 2, 2018, after Plaintiff filed this lawsuit, State Farm paid Plaintiff the $5,034.66 it had previously acknowledged it owed to Billion Auto, but had withheld for over two months.

Plaintiff has not been made whole for his property damages from the February 18, 2018 collision. State Farm is engaging in early subrogation without conducting a made whole analysis. Plaintiff sustained damages by virtue of State Farm's violation of Montana law and its refusal to honor its

obligations under its insurance contract.  Plaintiff's damages include, but are not limited to: attorney fees; the loss of use of money; emotional distress; and lost time and income.  His compensatory damages do not exceed $75,000.

## BASIS FOR FEDERAL JURISDICTION AND VENUE

Plaintiff, Jory Ruggiero, is and has been at all times relevant to this action, a resident of Bozeman, Montana.  Defendants, State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company are corporations headquartered in Illinois.  Both are engaged in the business of insurance in Montana.

Defendants John Does 1-5 are other entities, likely parents or subsidiaries of named Defendants, unknown to Plaintiff at this time, who may have contributed to causing Plaintiff's damages.

Plaintiff is a proper party to bring this action in that he has current claims for repair costs to his vehicle which his auto insurer, State Farm, refuses to pay.

Plaintiff initiated this action in the Montana Eighteenth Judicial District, Gallatin County, as Cause No. DV-18-660A on June 18, 2018, as it is:  1) the county where the property damaged is located, 2) the place of contract performance between Plaintiff and State Farm, and 3) the location

where Plaintiff's tort claims against State Farm arose.  This action was

subsequently removed to the U.S. District Court by Defendants on July 26,

2018 and is now captioned as Cause No. CV-18048-BU-BMM on the basis

that the amount of damages in controversy will exceed $75,000.00.

## FACTUAL AND LEGAL BASIS OF EACH CLAIM

### COUNT ONE – Breach of Contract

State Farm had a contractual duty to investigate and pay Plaintiff's

claim for the repair of his vehicle.  State Farm breached its contractual duty

by failing to properly investigate and pay Plaintiff's claim.  Prior to Plaintiff

filing suit, State Farm did not pay the $5,034.66 that it admitted it owed on

the claim.  State Farm's breach of contract caused damage to Plaintiff.

Plaintiff and State Farm have a contractual relationship through the

automobile insurance policy issued by State Farm.  State Farm breached this

contractual relationship by failing to adhere to Contract and Made Whole

Doctrine when it refused Plaintiff's request for reimbursement of the

diminished value of his vehicle.

State Farm's conduct constitutes an illegal early subrogation scheme

in violation of Montana's Made Whole Doctrine.  As a direct and proximate

result of State Farm's conduct and failure to ensure Plaintiff is made whole under applicable Montana law, he has suffered damages.

## COUNT TWO – Insurance Bad Faith

State Farm failed to properly investigate and apply its policy provisions to Plaintiff's claim; failed to respond to Plaintiff's entreaties for State farm to either pay Billion's repair bill or work with Plaintiff to determine a proper allocation of CSAA policy limit payment; and failed to properly pay Plaintiff's claim.  Through this and other conduct, State Farm breached its statutory duties under the Montana Unfair Claims Settlement Practices Act by violating § 33-18-201, et. seq., MCA.  State Farm's conduct also constitutes illegal early subrogation in violation of Montana's Made Whole Doctrine.  As a direct and proximate result of State Farm's violations of the above-referenced laws, Plaintiff has suffered damages.

## COUNT THREE – Declaratory Judgment

A justiciable controversy exists between Plaintiff and State Farm with respect to interpretation of the terms of Plaintiff's policy with State Farm and State Farm's obligations with respect to Plaintiff's claim for payment of Billion Auto's repair bill.  Plaintiff is entitled to a declaratory ruling,

pursuant to MCA § 27-8-201, et. seq., that State Farm must pay more than

the $3589.50 it paid to Billion for Plaintiff's repair bill.

## COUNT FOUR – Punitive Damages

State Farm deliberately attempted to save itself money by engaging in

insurance bad faith and failing to investigate or pay a legitimate claim.  State

Farm knew that such conduct would harm Plaintiff.  This conduct constitutes

actual malice as defined in § 27-1-221, MCA, and justifies imposition of

punitive or exemplary damages in an amount sufficient, in view of the size

and wealth of State Farm, to make an example of its conduct and to deter

similar wrongful actions by it and other insurers.

## COMPUTATION OF DAMAGES

At the time of the filing of this Action, State Farm owed Plaintiff the

following amounts:

1)    $4,110.16 rental car;

2)    $424.20 towing charges;

3)    $500 deductible reimbursement;

4)    $4,000 residual diminished value;

5)    Plaintiff seeks a reasonable sum of money to compensate him

        for his attorney fees and costs incurred incidental to the

prosecution of this claim pursuant to Montana Declaratory

Judgments Act, MCA § 27-8-101, et. seq.; Common Fund

Doctrine;  the Private Attorney General Doctrine; the insurance

exception to the American Rule; and any other applicable law;

6)   Plaintiff will ask a jury for a punitive damages award because

of the malice involved in State Farm's conduct, and an award

any other relief, including pre-judgment interest, to which

Plaintiff may be entitled at law or in equity.

## RELATED STATE OR FEDERAL LITIGATION

Plaintiff is not aware of any related State or federal litigation.

## PLAINTIFF'S PROPOSED STIPULATIONS OF FACT AND LAW THAT WERE NOT ACCEPTED BY STATE FARM

1.   The driver and her auto insurer, CSAA, admitted liability for the collision.

2.   Plaintiff's damages exceeded CSAA's $20,000 policy limit.

3.   Plaintiff's damages included tow truck charges, rental car, reasonable time lost from work with the repair, reimbursement for deductible and residual diminished value of his vehicle post accident.

4.   State Farm denied the claim for the total of the auto repair and paid $3,589.50 to Billion Auto Group.

5.   State Farm agreed that Plaintiff was entitled to at least $5,034.66 of CSAA's policy limit payment for rental car ($4,110.16), towing charges ($424.20) and reimbursement of his deductible ($500).

6.     State Farm refused to allow Plaintiff any compensation from the CSAA policy limit for the residual diminished value of his truck or for his time in dealing with the vehicle repair.

7.     Because of State Farm's conduct and failure to investigate this claim, Plaintiff was forced to pay personal funds to Billion Auto to satisfy the full $20,000 owing on his vehicle repair.

8.     State Farm's conduct and failure to properly handle Plaintiff's claim constitutes early subrogation when Plaintiff has not been made whole for his property damage.

9.     State Farm has violated Montana law by its refusal to honor its obligations under its insurance contract and Plaintiff has been damaged.

10.     State Farm's failure to property investigate and apply its provisions to Plaintiff's claim; failure to respond to Plaintiff's request to pay Billion's repair bill or work with Plaintiff to determine a proper allocation of CSAA's policy limit payment and failure to property pay Plaintiff's claim constitute insurance bad faith.

11.     Plaintiff and State Farm have a justiciable controversy with respect to the interpretation of the terms of Plaintiff's policy with State Farm and State Farm's obligations with respect to Plaintiff's claim for payment of Billion's Auto repair bill.

12.     State Farm breached its contractual duty to investigate and pay Plaintiff's claim for repair of his vehicle.

13.     State Farm deliberately attempted to save itself money by failing to investigate and pay a legitimate claim and its conduct damaged Plaintiff.  State Farm knew that such conduct would harm Plaintiff and this conduct constitutes actual malice justifying an award of punitive damages.

## PROPOSED DEADLINES RELATING TO JOINDER OF PARTIES OR AMENDMENT OF THE PLEADINGS

The Parties agree to proposed deadlines for joinder or amendment of the pleadings 60 days after the Preliminary Pretrial Conference.

## CONTROLLING ISSUES OF LAW SUITABLE FOR PRETRIAL DISPOSITION

The Parties believe that liability is likely to be determined on Motions for Summary Judgment.

## NAMES/CONTACT INFORMATION OF POTENTIAL WITNESSES

1.   Jory Ruggiero, 720 E. Orange Street, Bozeman, MT  59715

2.   Hannah Lumbus, address unknown

3.   Catherine Ferguson, address unknown

4.   Misty Murphy-Castleberry, Claims Representative, CSAA

5.   Kay Buckentin, Claim Specialist, State Farm Mutual Automobile Insurance Company, State Farm Claims, P.O. Box 52250, Phoenix, AZ  85072-2250

6.   Max Molina, AAA Claims Center, P.O. Box 24523, Oakland, CA 94623, 702-790-5107

7.   Ginny Orton, Billion Auto Group, 243 Automotive Ave., Bozeman, MT, 59718

8.   Brady Palmer, JC Billion, 270 Automotive Ave., Bozeman, MT 59718

9.   MHP Trooper, Bertie Lau, MHP 179-71A

10.    All witnesses identified by Defendants

11.    All witnesses to be disclosed in the discovery process or otherwise

12.    All witnesses for rebuttal or foundation purposes.

## POTENTIAL EXPERT WITNESS TOPICS

1)    Insurance Claims Handling

2)    Residual diminished value

## SUBSTANCE OF ANY INSURANCE AGREEMENT THAT MAY COVER RESULTING JUDGMENT

1.    1st Party Insurer - State Farm Insurance Policy
No. L00 8500-E23-26Q

2.    3rd Party Insurer - AAA Insurance/CSAA Policy No.
CAAS204842331

## STATUS OF SETTLEMENT DISCUSSIONS AND/OR COMPROMISE OF THE CASE

The Parties have not discussed settlement.  The Parties state in the

Joint Discovery Plan that mediation may be appropriate.

## SUITABILITY OF SPECIAL PROCEDURES

The Parties are not aware of any special procedures that are

appropriate at this time.

DATED this 30th day of October, 2018.


WESTERN JUSTICE ASSOCIATES, PLLC


/s/ Domenic A. Cossi_____
DOMENIC A. COSSI, ESQ.
303 West Mendenhall, Ste. 1
Bozeman, MT 59715
*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE L.R.</u>

I, the undersigned, do hereby certify under penalty of perjury, that on the 30th day of October, 2018, a copy of the foregoing was served by (I) electronic means to all of the Parties noted in the Court's ECF transmission facilities and/or (II) by mail on the following Parties: None.

WESTERN JUSTICE ASSOCIATES, PLLC

/s/ Domenic A. Cossi, Esq.
Domenic A. Cossi, Esq.
303 W. Mendenhall St., Suite 1
Bozeman, MT 59715
*Attorneys for Plaintiff*